**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division**

| | |
|---|---|
| **MEGAN J. QUICK,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) **Civil Action No. 3:17CV083** |
| **v.** | ) |
| | ) |
| **ESSEX BANK,** | ) **JURY TRIAL IS REQUESTED** |
| | ) |
| **Defendant.** | ) |

**Serve: John M. Oakey, III, Esq.
Registered Agent
9954 MAYLAND DRIVE, STE 2100
RICHMOND, VA 23233**

## COMPLAINT

COMES NOW PLAINTIFF Megan J. Quick, by counsel and pursuant to Federal Rule of Civil Procedure 8(a), and states the following as her Complaint against Defendant Essex Bank ("Essex Bank" or the "Bank"):

## PRELIMINARY STATEMENT

1.    Plaintiff brings this action against Essex Bank for unpaid overtime pursuant to the Fair Labor Standards Act (hereinafter "FLSA"), 29 U.S.C. §§ 207(a) & 216; and for wrongful termination and intentional infliction of emotional distress under Virginia common law.

2.    Plaintiff was employed by Essex Bank in the Bank's West Point, Virginia, office from 2009 until her constructive discharge from employment in July of 2016.

## JURISDICTION AND VENUE

3.    This Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367, and 1343; 29 U.S.C. § 626(c), and 29 U.S.C. § 216(b).

4.    Venue is proper in this District and Division pursuant to 23 U.S.C. § 1391(b), as the actions and unlawful employment practices alleged herein were committed in the Eastern District of Virginia, and the Bank operates and conducts business operations in and around Richmond, Virginia.

## THE PARTIES

5.    Plaintiff is a citizen of the United States and a resident of West Point, which is located in King William County, Virginia.

6.    Essex Bank is a publicly traded company with more than twenty (20) full-service offices located in Virginia and Maryland.

7.    The Bank, which is headquartered in Richmond, Virginia, engages in a general commercial banking business that provides both inter- and intra-state financial services to individuals and small businesses, including individual and commercial demand and time deposit accounts, commercial and industrial loans, consumer and small business loans, real estate and mortgage loans, investment services, on-line and mobile banking products, and safe deposit box facilities.

## THE FACTS

8.    The Bank employed Plaintiff for approximately seven (7) years, during which time she regularly and routinely worked in excess of forty (40) hours per week without receiving overtime pay for at least some of the overtime hours she worked.

9.    From September 2010 until August 2011, Plaintiff worked in various Essex Bank branches as a bank teller.  In August 2011, Plaintiff was promoted into the position of Financial Services Associate.  Plaintiff served the Bank as a Financial Services Associate, which was classified as a non-exempt position, until approximately November of 2015.

10.     In November of 2015, Plaintiff was asked to serve as an acting Branch Officer.  In that role, Plaintiff sometimes supervised the work of other employees and sometimes worked alone.  Plaintiff's primary duties, as an acting Branch Officer, did not include the exercise of discretion and independent judgment with respect to matters of significance to the Bank.

11.     Upon asking Plaintiff to serve in the capacity of acting Branch Officer in November of 2015, Essex Bank willfully and improperly classified Plaintiff as an exempt employee and failed to pay her overtime pay for hours worked in excess of forty (40) each week.

12.     Plaintiff was formally promoted to the position of Branch Officer in January 2016.

13.     Throughout her employment with Essex Bank, Plaintiff was regularly and routinely required to spend 10-15 minutes per work day "opening" the West Point Office and various other Essex Bank Office facilities.  Plaintiff was not permitted to clock in for time spent "opening" the Office, nor was she paid regular or overtime wages for the time she worked "opening" the Office.

14.     Throughout the course of her employment, Plaintiff received only positive performance reviews.

15.     Prior to June 2016, Essex Bank never subjected Plaintiff to any disciplinary action.

16.     On or about Friday, June 17, 2016, after 9:00 p.m., Plaintiff was driving in West Point when she was stopped by a red traffic light.  While stopped, Plaintiff was the victim of a crime when an unidentified male pedestrian standing next to her vehicle exposed his genitalia to her.

17.     Traumatized, Plaintiff reported the crime to a local law enforcement officer by telephone.

18.     Shortly thereafter, on the same day, Plaintiff posted a short statement on her private social media page that was intended to alert her friends and family members to avoid the intersection where she had been victimized.  Plaintiff's post included a from-behind photograph of the male perpetrator, taken at the intersection, that did not identify the man's face or name.

19.     Plaintiff maintained her social media post for only about one (1) hour before she removed it from her account.

20.     When Plaintiff returned to work, on or about Monday, June 20, 2016, her supervisor texted her, instructing her to report directly to Ms. Jakeeta Plumley, in the Richmond Office's Human Resources department, rather than to her normal West Point Office.

21.     Plaintiff drove 1.5 hours, to the Richmond Office, where Ms. Plumley told Plaintiff that as a result of her private social media post regarding the incident of her victimization, the Bank was placing her on administrative leave and seeking her resignation.

22.     Humiliated and traumatized that the Bank would use her private post to punish her for speaking privately about being victimized, Plaintiff felt she had no alternative but to resign in order to avoid termination and further embarrassment.

23.     Thereafter, the Bank closed Plaintiff's personal checking account without notifying her of its intent to do so.  As a direct result, Plaintiff's medical insurance, which was paid from that account, was canceled for lack of payment.

24.     Additionally, in the months following her constructive discharge, the Bank informed Plaintiff's potential new employers that she was "ineligible for re-hire," intentionally causing her embarrassment and shame and causing her to lose of at least one potential job opportunity.

25.     As a result of the Bank's wrongful termination of her employment and its subsequent, intentional humiliation and degradation, Plaintiff has experienced episodes of extreme anxiety, sleeplessness, and depression.

26.     The Bank's actions, described herein, were willful and committed in knowing violation of Plaintiff's rights and/or were done with reckless disregard for the same.

## COUNT I
## VIOLATION OF THE FAIR LABOR STANDARDS ACT

27.     Plaintiff hereby incorporates by reference paragraphs 1-26 of Plaintiff's Complaint as if fully stated herein.

28.     Throughout the course of her employment, Essex Bank failed to pay Plaintiff regular wages at the normal hourly rate of pay for the time she spent "opening" Essex Bank's West Point Office and other branch Offices.

29.     Throughout the course of her employment, Essex Bank failed to pay Plaintiff overtime wages at a rate of one and one half times the normal hourly pay rate for all of the hours that Plaintiff worked in excess of forty (40) hours per week "opening" Essex Bank's Offices.

30.     At all relevant times, Plaintiff was not an exempt employee as defined by the applicable regulations of the FLSA.

31.     The Bank's actions were intentional, willful, malicious and in reckless disregard of Plaintiff's rights.

## COUNT II
## CONSTRUCTIVE DISCHARGE IN VIOLATION OF VIRGINIA COMMON LAW

32.     Plaintiff hereby incorporates by reference paragraphs 1-31 of Plaintiff's Complaint as if fully stated herein.

33. Essex Bank constructively discharged Plaintiff in violation of a public policy that is designed to protect the health, safety and welfare of the citizens of the Commonwealth of Virginia.

34. In particular, by constructively discharging Plaintiff for publishing to her friends and family, via a private social media account, a crime warning and information about her victimization, Essex Bank violated at least one public policy that is recognized by the Commonwealth of Virginia, Virginia Code § 19.2-11.01, which provides that the victims of crime shall be "treated with dignity, respect and sensitivity."

35. Plaintiff is a member of the class of persons that Virginia Code § 19.2-11.01 is designed to protect.

36. By administratively suspending and constructively forcing Plaintiff to resign for posting information about a crime and her victimization, Essex Bank wrongfully discharged Plaintiff in violation of Virginia common law, thereby causing Plaintiff damages for lost wages, lost benefits, loss of reputation in the community, embarrassment, and extreme humiliation.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

37. Plaintiff hereby incorporates by reference paragraphs 1-36 of Plaintiff's Complaint as if fully stated herein.

38. As a result of wrongfully terminating Plaintiff, closing her bank account without warning, recklessly or intentionally causing Plaintiff to lose her medical insurance, and intentionally interfering with her future job prospects, Essex Bank engaged in conduct that was intentional or reckless, and such conduct was extreme, outrageous and intolerable.

39.     As a direct result of Essex Bank's actions, Plaintiff has suffered humiliation, degradation, anxiety, depression and such severe emotional distress that Plaintiff was required to seek and has continued to seek ongoing medical treatment.

## REQUESTED RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor and award her the following relief:

a.      All back wages, front pay, lost benefits and other compensatory damages Plaintiff is owed as a result of Essex Bank's unlawful and wrongful termination of Plaintiff's employment;

b.      All unpaid wages, overtime wages, and liquidated damages owed by Essex Bank to Plaintiff pursuant to the FLSA, 29 U.S.C. § 216;

c.      All costs and attorney's fees incurred in litigating this action, owed to Plaintiff pursuant to the FLSA;

d.      Compensatory damages and punitive damages of up to $350,000.00 resulting from the Bank's intentional infliction of emotional distress;

e.      Pre- and post-judgment interest; and

f.      Any and all other legal and/or equitable relief to which Plaintiff is entitled.

## DEMAND FOR TRIAL BY JURY

Comes now the Plaintiff, Megan J. Quick, by counsel, and hereby requests a trial by jury on all issues deemed so triable.

Respectfully submitted,

MEGAN J. QUICK,

By Counsel

_/s/_ Nichole Buck Vanderslice
Nichole Buck Vanderslice (VSB #42637)
_Email: nvanderslice@nbvlaw.com_
LAW OFC OF NICHOLE BUCK VANDERSLICE, PLLC
9019 Forest Hill Avenue, Suite 2C
Richmond, VA 23235
Telephone: 804.272.2920