IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

MEGAN J. QUICK,

    Plaintiff,

v.                                                                 Civil Action No. 3:17cv83

ESSEX BANK,

    Defendant.

## MEMORANDUM OPINION

This matter comes before the Court on Defendant Essex Bank's "Motion to Dismiss for Failure to State a Claim (*Partial – as to Count III*)" (the "Partial Motion to Dismiss") pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] (ECF No. 4.) Plaintiff Megan J. Quick has responded, (ECF No. 9), and Essex Bank has replied, (ECF No. 10). Accordingly, this matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. §§ 1331[2] and 1367(a).[3] For the reasons that follow, the Court will grant the Partial Motion to Dismiss.

---

[1] Federal Rule of Civil Procedure 12(b)(6) allows dismissal for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).

[2] "The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. Count I of the Complaint alleges violations of the Fair Labor Standards Act (the "FLSA"), 29 U.S.C. §§ 201–219.

[3] "[I]n any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution." 28 U.S.C. § 1367(a). "'Supplemental jurisdiction . . . allows parties to append state law claims over which federal courts would otherwise lack jurisdiction, so long as they form part of the same case or controversy as the federal claims.'" *LaGrant v. U.S. Bank Nat'l Ass'n*, No. 3:14cv809, 2015 WL 1208967, at *5

## I. Federal Rule of Civil Procedure 12(b)(6) Standard

"A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citing 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990)). In considering a motion to dismiss for failure to state a claim, a plaintiff's well-pleaded allegations are taken as true and the complaint is viewed in the light most favorable to the plaintiff. *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir. 1993); *see also Martin*, 980 F.2d at 952.

The Federal Rules of Civil Procedure "require[] only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (omission in original) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Plaintiffs cannot satisfy this standard with complaints containing only "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Id.* (citations omitted); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). Instead, a plaintiff must assert facts that rise above speculation and conceivability to those stating a claim that is "plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). Therefore, in order for a claim or complaint to survive dismissal for failure to state a claim, the

---

(E.D. Va. Mar. 16, 2015) (quoting *Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995)). Because Quick asserts a federal claim under the FLSA, this Court will exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), over her state law claims of constructive discharge (Count II) and intentional infliction of emotional distress (Count III).

2

plaintiff must "allege facts sufficient to state all the elements of [his or] her claim." *Bass v. E.I. DuPont de Nemours & Co.*, 324 F.3d 761, 765 (4th Cir. 2003) (citations omitted).

## II. Factual and Procedural Background

### A. Summary of Allegations in the Complaint[4]

Megan Quick served as an employee of Essex Bank for approximately seven years. During Quick's tenure, Essex Bank promoted her from bank teller to Financial Services Associate to Branch Officer. Throughout her employment, Quick received "only positive performance reviews." (Compl. ¶ 14.)

On Friday, June 17, 2016, after 9:00 p.m., while stopped at a stoplight in downtown West Point, Virginia, a male pedestrian exposed his genitalia to Quick, an act that traumatized her. That same day, Quick posted about her experience on a private social media account and attached a photograph of the male pedestrian from behind. She did not show the pedestrian's face or use his name on her social media post.

On Monday, June 20, 2016, Quick's supervisor asked her to report to Essex Bank's Richmond Human Resources Office. When Quick arrived at the Richmond office, Ms. Jakeeta Plumley told Quick that, because of her social media post, Essex Bank was "placing her on administrative leave and seeking her resignation." (*Id.* ¶ 21.) As a result, Quick felt obligated to resign from her job "to avoid termination and further embarrassment." (*Id.* ¶ 22.) Following her resignation and without notice, Essex Bank closed Quick's checking account, which Quick used to pay her health insurance. Thus, when the account closed, Quick failed to pay for her health insurance and the insurance company cancelled her policy. Moreover, Essex Bank allegedly

---

[4] For purposes of the Partial Motion to Dismiss, the Court will assume the well-pleaded factual allegations in the Complaint to be true and will view them in the light most favorable to Quick. *Matkari*, 7 F.3d at 1134.

informed potential new employers that Quick was "ineligible for re-hire." (*Id.* ¶ 24.) Ultimately, she lost at least one job opportunity and suffered humiliation, degradation, "episodes of extreme anxiety, sleeplessness, and depression." (*Id.* ¶ 25.)

## B. Procedural History

Quick alleges in the three-count Complaint the following causes of action: (1) violation of the Fair Labor Standards Act; (2) constructive discharge in violation of Virginia common law; and, (3) intentional infliction of emotional distress ("IIED"). She seeks compensatory and punitive damages, costs, and attorneys' fees.

Essex Bank moves to dismiss Count III, Quick's IIED claim, because Quick fails to state a claim upon which relief can be granted. Essex Bank asks the Court to dismiss Count III with prejudice.

## III. Analysis

The Court will grant the motion to dismiss Count III because Quick fails to plausibly allege the requisite elements of an IIED claim under Virginia law. Neither the circumstances of Quick's termination nor the severity of her injuries, as pleaded, plausibly allege an IIED claim under Virginia law. Accordingly, the Court will dismiss Count III without prejudice. The Court will permit Quick to amend her complaint if additional allegations can cure the defects identified below.

### A. Quick Fails to State an IIED Claim Upon Which Relief Can Be Granted

#### 1. Virginia Law Governs Quick's Tort Claim of IIED

Count III alleges IIED, a tort claim. Generally, when a cause of action arises in tort, "Virginia applies the law of the state where the tortious conduct or injury occurred." *Hitachi Credit Am. Corp. v. Signet Bank*, 166 F.3d 614, 628 (4th Cir. 1999) (citing *Jones v. R.S. Jones & Assocs.*, 431 S.E.2d 33, 34 (Va. 1993)). Because the tortious conduct alleged in Count III

occurred in Virginia, Virginia law applies to Quick's IIED claim.

## 2. Elements of an IIED Claim in Virginia law

To state a claim for IIED under Virginia law, a plaintiff must plausibly allege: (1) "the wrongdoer's conduct was intentional or reckless"; (2) "the conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality"; (3) "there was a causal connection between the wrongdoer's conduct and the emotional distress"; and, (4) "the emotional distress was severe." *Womack v. Eldridge*, 210 S.E.2d 145, 148 (Va. 1974). Because of the "risks inherent in torts where injury to the mind or emotions is claimed," Virginia law does not favor IIED claims. *Harris v. Kreutzer*, 624 S.E.2d 24, 33 (Va. 2006) (citation omitted) (internal quotation marks omitted). Virginia law also does not completely bar IIED claims. *Daniczek v. Spencer*,[5] 156 F. Supp. 3d 739, 758 (E.D. Va. 2016).

The second element's requirement that the conduct be "outrageous" is a question of law, but "[w]here reasonable [minds] may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." *Womack*, 210 S.E.2d at 148. The fourth element requires that the distress rise to a level "that no reasonable person could be expected to endure." *Russo v. White*, 400 S.E.2d 160, 163 (Va. 1991). "[E]mbarrassment, disappointment, or hurt feelings" alone cannot prove emotional stress severe enough to sustain an IIED claim. *Denny v. Elizabeth Arden Salons, Inc.*, 456 F.3d 427, 436 (4th Cir. 2006).

---

[5] The *Federal Supplement, Third Series* published the case—apparently incorrectly—as "*Daniczek v. Spencer*." The court's opinion and docket spell the plaintiff's name with a "j" instead of an "i": "Danjczek." For ease of reference, and to maintain consistency with the *Federal Supplement, Third Series*, this Memorandum Opinion refers to the case name as "Daniczek." When quoting the opinion, however, this Memorandum Opinion refers to the plaintiff as "Danjczek."

5

For some time, Virginia federal courts have discussed whether Virginia's heightened pleading standards for IIED claims apply when a federal court evaluates an IIED claim under supplemental jurisdiction. *See Daniczek*, 156 F. Supp. 3d at 758–59. Courts have concluded that federal pleading standards prevail: "[T]he Fourth Circuit requires federal courts applying Virginia [IIED] law to apply laxer standards of pleading than Virginia requires in its own state courts." *Id.* at 758. As such, "*Twombly* and *Iqbal* demand specificity (rather than conclusory allegations), without altering the type of harm the plaintiff must allege." *Id.* at 759.

### 3. Quick Fails to Plausibly Allege Outrageousness

Quick fails to plausibly allege that Essex Bank's "conduct was outrageous and intolerable in that it offends against the generally accepted standards of decency and morality." *Womack*, 210 S.E.2d at 148. Quick contends that Essex Bank's actions surrounding her termination— terminating her employment because of her social media post, closing her bank account, and causing her to lose her health insurance—qualify as "outrageous" under Virginia law. The Court cannot so find. In this case, even taking all facts as true and viewing them favorably toward Quick, she does not allege a series of actions that "'go beyond all possible bounds of decency . . . [that are] utterly intolerable in a civilized community.'" *Almy v. Grisham*, 639 S.E.2d 182, 187 (Va. 2007) (quoting *Russo v. White*, 400 S.E.2d 160, 162 (Va. 1991)).

When considered alone, actions that "undermine a plaintiff's employment . . . are not outrageous." *Daniczek*, 156 F. Supp. 3d at 760 (citing cases). Such actions become outrageous only if "exacerbating factors" accompany the loss of employment. *Id.* "[T]he conduct, manner, or means associated with undermining a plaintiff's employment may create outrageousness," and "allegations may be outrageous in the aggregate." *Id.*

In *Daniczek*, a series of actions taken by a prosecutor with the purpose of undermining and harassing a defense attorney were found to "create outrageousness." *Id.* at 760–61. The

6

*Daniczek* court cited the following "parade of horribles," in the aggregate, to support its conclusion:

> [B]ehaving so poorly in cases involving Danjczek's clients that the court appointed a special prosecutor to replace Spencer in her cases; verbally harassing Danjczek in the courtroom on May 15, 2015[,] in the course of a case in which he was not even involved; assaulting Danjczek in the courtroom on May 15, 2015 (conduct in which no lawyer may ever engage); swearing out a warrant that he knew lacked probable cause and having Danjczek served in the courtroom; having Danjczek removed from the Court Appointed Counsel list; threatening to release, and then releasing, documents to trade publications which damaged Danjczek's reputation.

*Id.* at 760 (citations omitted).

Quick does not allege any such "exacerbating factors" surrounding her termination. Indeed, Quick's allegations focus only on Essex Bank's employment decision and the natural consequences of that decision. The Complaint does not allege that Essex Bank harassed Quick. The Complaint does not suggest that Essex Bank pushed Quick to resign in a manner that resulted in public humiliation. Certainly, Quick alleges no assault or service, in public, of warrants lacking probable cause. Instead, she alleges loss of income and healthcare. But courts have held that causing a plaintiff to lose health care coverage does not qualify as "outrageous" under Virginia law. *See Crittendon v. Arai Americas, Inc.*, No. 2:13cv567, 2014 WL 31490, at *6 (E.D. Va. Jan. 3, 2014) ("Health insurance cancelations are a fact of modern life . . . and do not alone result in severe emotional distress."). Even in the aggregate, Essex Bank's conduct cannot qualify as outrageous.[6] Accordingly, Quick fails to plausibly allege outrageousness.

---

[6] The Court will not impute the peculiar conduct of the exhibitionist—the subject of Quick's social media post—to Essex Bank. While several Virginia cases have recognized sexually threatening or explicit situations as "outrageous" under Virginia law, *see, e.g., Faulkner v. Dillon*, 92 F. Supp. 3d 493 (W.D. Va. 2015) (finding that sexual harassment experienced by Plaintiff was extreme enough to survive a 12(b)(6) motion to dismiss an IIED claim for failure to state a claim); *Shifflett v. Food Lion, Inc.*, No. CL98-7298, 1998 WL 34180216 (Va. Cir. 1998) (holding that fear of sexual assault is outrageous enough to support an IIED claim from demurrer); *Hygh v. Geneva Enterprises, Inc.*, No. 163326, 1997 WL 33615551, at *5 (Va. Cir.

7

### 4. Quick Fails to Plausibly Allege Severity

Even if Quick had plausibly alleged that Essex Bank's conduct was sufficiently outrageous to state an IIED claim, Quick's allegations regarding the severity of her emotional distress, even if true, fail to satisfy the fourth element of an IIED claim. To state an IIED claim, the law requires that a plaintiff suffer *severe* emotional distress.

To qualify as severe, a plaintiff's distress must rise to a level "that no reasonable person could be expected to endure." *Russo*, 400 S.E.2d at 163; *see also Denny*, 456 F.3d at 436 (explaining that "embarrassment, disappointment, or hurt feelings" alone cannot prove emotional stress severe enough to sustain an IIED claim). Here, Quick contends that she meets the pleading requirements for severe emotional distress when asserting that she lost at least one job opportunity and suffered humiliation, degradation, "episodes of extreme anxiety, sleeplessness, and depression." (Compl. ¶¶ 24, 25.)

In *Russo*, the Supreme Court of Virginia explained that allegations that the plaintiff "was nervous, could not sleep, experienced stress and 'its physical symptoms,' withdrew from activities, and was unable to concentrate at work" did not meet the threshold of "extreme emotional distress that is so severe that no reasonable person could be expected to endure it." 400 S.E.2d at 163. Because the plaintiff made no claim of "any objective physical injury caused by the stress, that she sought medical attention, that she was confined at home or in a hospital, or that she lost income," the Supreme Court of Virginia sustained the trial court's demurrer. In *Almy*, on the other hand, the Supreme Court of Virginia held that the trial court erred in sustaining a demurrer because the plaintiff adequately alleged an IIED claim. In *Almy*, the plaintiff's allegations of emotional distress obtained "such a level of severity that '[e]very aspect

---

1997) (holding a victim of sexual assault can sustain an IIED claim under Virginia law), Quick brings her claim against Essex Bank, not the exhibitionist.

of [her] life [was] fundamentally and severely altered,' such that she 'had trouble even walking out of the front door.'" 639 S.E.2d at 188.

Quick's allegations fall well short of the level of severity observed in *Almy*, more closely tracking those found to be insufficient in *Russo*. Like the plaintiff in *Russo*, Quick does not point to any diagnosed mental illness, any counseling she received, or any inability to function as a result of the purportedly outrageous conduct. Without more, Quick does not plausibly allege "extreme emotional distress that is so severe that no reasonable person could be expected to endure it." *Russo*, 400 S.E.2d at 163.

## IV. Conclusion

For the foregoing reasons, the Court will grant Essex Bank's Partial Motion to Dismiss. (ECF No. 4.) The Court will dismiss Count III, the IIED claim, without prejudice. The Court will grant Quick leave to amend her Complaint if the amendments cure the defects discussed above. An appropriate Order shall issue.

/s/ M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date 6-16-17